# PELTON GRAHAM LLC

ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

January 11, 2022

**VIA CM/ECF**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re: *Vazquez v. Jasem Restaurant, Inc. et al.*, Civil Action No. 20 Civ. 08321 (KPF)
       **FLSA Settlement Fairness Letter**

Dear Judge Failla:

  This office represents named plaintiff Leandro Vazquez Vazquez ("Vazquez" or "Plaintiff"). We write, jointly with counsel for Jasem Restaurant, Inc. d/b/a Sutton Café Restaurant, John Manolidis and Vera Patton[1] (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) to request the Court's approval of the parties' proposed settlement in this matter. Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq. ("Pelton Aff.")) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

### I. Procedural History and Settlement Negotiations

  Plaintiff commenced this action by filing his Class & Collective Action Complaint in this Court on October 6, 2020. (Dkt. No. 1 (the "Complaint")). Defendants filed their Answer to the Complaint on December 31, 2020, denying all material allegations. (Dkt. No. 12).

  On January 1, 2021, the Court referred this matter to the SDNY's Mediation Office under Local Civil Rule 83.9. (Dkt. No. 14). In accordance with the Court's Referral Order, Defendants served pre-mediation disclosures including handwritten receipts showing wage payments, time cards, wage notice documents, and certain financial records. Plaintiff exchanged all relevant documents in his possession including a letter from Defendants regarding his employment as well as additional handwritten receipts. (Pelton Aff. ¶ 7). Plaintiff also produced and exchanged a damages analysis based upon Plaintiff's best recollection of his hours worked and wages received. (*Id.*).

---

[1] Identified in the Complaint and caption as Vera Manolidis.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Hon. Katherine Polk Failla
FLSA Settlement Fairness Letter
Page **2** of **6**

On March 5, 2021, the parties participated in a mediation before Susan Salazar, Esq. (Pelton Aff. ¶ 10). The parties did not reach a resolution at that time but made progress toward settlement. (*Id.*). After postponing a subsequent session to permit Defendants to apply for and receive funds from the Restaurant Revitalization Fund ("RRF") of the American Rescue Plan Act of 2021, the parties held a follow-up mediation on October 22, 2021, at which time the parties reached a settlement in principle. (*Id.*). Over the next weeks, the parties finalized the terms of the settlement and drafted and executed the Settlement Agreement and Wage and Hour Release ("Settlement Agreement"). (Pelton Aff. ¶ 11, Ex. A). The Settlement Agreement as well as the mediation proceedings have been translated into Spanish for Plaintiff Vazquez by Belinda Herazo, whose Declaration detailing her translation work is attached as **Exhibit B**.

## II.     The Settlement Accounts for Litigation Risk

Throughout the litigation, the parties have disputed several issues of fact concerning Plaintiff's employment with Defendants. Plaintiff alleges that throughout his employment with Defendants, from in or around August 2009 through on or about August 10, 2020, he typically worked six (6) or seven (7) days per week, except for the period that Sutton Café was closed due to COVID-19 and the following months between May 2020 and the end of his employment, when he typically worked five (5) days per week. During most of his employment, Plaintiff claims that he typically worked between fifty-five (55) and seventy (70) hours per week, and during the final months of his employment, Plaintiff typically worked forty-five (45) hours. At all times, Plaintiff alleges that he was paid a flat weekly rate that did not include overtime premiums or spread of hours premiums and for several years fell below the New York statutory minimum wage, which he was paid each week in cash. Plaintiff alleges that he was not provided with any reliable means of tracking his hours worked. Finally, Plaintiff alleges that he did not receive accurate wage statements or wage notices and that all documents that he received related to his pay were provided in English, which he does not read or speak.

Defendants provided certain handwritten receipts showing wage payments and tips received, time cards and wage notice forms. Defendants contend that these contemporaneous business records confirm that Plaintiff was properly paid for the times covered. Accordingly, Defendants dispute the number of hours worked by Plaintiff and the correct applicable New York statutory minimum wage (*i.e.* tipped versus non-tipped) and assert that Plaintiff received a wage notice that satisfies NYLL § 195(1)(a). Defendants also maintain that Sutton Café is a small restaurant whose business was severely impacted by the COVID-19 pandemic, such that Defendants could not afford to pay the full amount to which Plaintiff claims he is entitled.

While Plaintiff believes that a factfinder would credit his testimony over Defendants and would reject the information set forth in Defendants' records, particularly the time cards, Plaintiff recognizes the risk he would face at trial as well as the potential difficulty in recovering a judgment. Defendants recognize that they are missing some business records due to flooding at the restaurant and that the costs of litigation would be difficult expenses for them to bear.

Hon. Katherine Polk Failla
FLSA Settlement Fairness Letter
Page **3** of **6**

As mentioned above, in connection with Plaintiff's initial disclosures, Plaintiff created a damages analysis based upon his best recollection of his hours worked and wages paid. In total, Plaintiff's damages analysis calculated $17,766.89 in unpaid minimum wage, $38,570.20 in unpaid overtime, $20,864.40 in unpaid spread of hours premiums, $10,000.00 in wage notice and wage statement damages, $77,201.49 in liquidated damages (i.e., 100% of the unpaid wage damages), and $32,794.24 in prejudgment interest for a grand total of $197,197.22. (Pelton Aff. ¶ 8). Although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the possibility that he would receive much lower damages, or nothing at all. Accordingly, with the assistance of experienced employment law mediator, Susan Salazar, Esq. the parties were able to reach an agreement through arm's length discussions which would ensure that Plaintiff receives guaranteed compensation for his claims.

The parties believe that the settlement amount (i.e., $55,000.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial, as it represents approximately 70% of Plaintiff's calculated unpaid wage damages.

**III.    Settlement Terms**

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $55,000.00 (the "Settlement Amount"). Of the Settlement Amount, $18,600.00 is payable to Plaintiff's counsel (consisting of $400.00 in expense reimbursement and $18,200.00 in attorneys' fees). The remaining $36,400.00 is payable directly to Plaintiff (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiff and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions can be "contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Barsa v. Beacon Health Options, Inc.,* No. 19-CV-1646 (JPO)(BCM), 2020 U.S. Dist. LEXIS 246551, at *21, 2020 WL 7240346, at *8 (S.D.N.Y. July 10, 2020) (internal citations omitted*).* However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *Santos v. Sofa Dr., Inc.,* No. 20-CV-9349 (JLC), 2021 U.S. Dist. LEXIS 221402 at *4, 2021 WL 5316405, at *2 (S.D.N.Y. Nov. 16, 2021). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

Hon. Katherine Polk Failla
FLSA Settlement Fairness Letter
Page **4** of **6**

1) The non-disparagement provision is mutual and binds both Plaintiff and Defendants. Following *Cheeks*, Courts have routinely approved settlements containing mutual non-disparagement clauses. *Mazzara v. Kill Dare, Corp.*, No. 20 CIV. 9181 (ER), 2021 WL 5014777, at *3 (S.D.N.Y. Oct. 28, 2021); *Cortes v. Latina Media Ventures LLC*, No. 18-CV-4449 (AJN), 2020 WL 8736854, at *1 (S.D.N.Y. Aug. 16, 2020); *see also Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016).

*2)* Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *Hernandez v. El Azteca y El Guanaco Rest Corp.,* No. 20 CIV. 10316 (ER), 2021 WL 5847648, at *4 (S.D.N.Y. Dec. 9, 2021) (collecting cases).

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

## IV.   Plaintiff's Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of January 11, 2021, Plaintiff's counsel has spent more than 80 hours in prosecuting and settling this matter, resulting in a lodestar of $21,521.04. *See* Pelton Aff. Ex. C. Plaintiff's counsel has spent $400.00 in actual litigation costs for the filing of the complaint. *Id.* at Ex. D. The portion of the settlement amount that Plaintiff seeks as attorneys' fees (i.e., $18,200) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, falls below the lodestar amount and is consistent with what was agreed upon between the Plaintiff and his counsel in his retainer agreement.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar have been approved in connection with recent wage and hour default judgments in the Eastern and Southern Districts of New York. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp.*, No. 18-cv-4036, Dkt. No. 156 (S.D.N.Y. Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates). Similar rates are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York, including in FLSA/NYLL actions. *See*, *e.g.*, *Guallpa v. NY Pro Signs, Inc.*, No. 11-cv-3133, 2014 U.S. Dist. LEXIS 77033, at *27-*29 (S.D.N.Y. May 27, 2014) (awarding $300-$600 per hour for experienced FLSA attorneys); *Viafara v. MCIZ Corp.*, No. 12-cv-7452, 2014 U.S. Dist. LEXIS 60695, at *39-*41

Hon. Katherine Polk Failla
FLSA Settlement Fairness Letter
Page **5** of **6**

(S.D.N.Y. Apr. 30, 2014) (finding reasonable hourly rates of $550 for senior partner and $350 for attorney identified as "counsel").

Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

### V.   The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, courts recognize a "strong presumption in favor of finding a settlement fair in cases like this one brought under the… FLSA" as the courts "are not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Santos*, 2021 U.S. Dist. LEXIS 221402, at *1 (internal citations omitted). Moreover, "court approval of an FLSA settlement is appropriate when the settlement is reached as a result of contested litigation to resolve *bona fide* disputes." *Payano v. 1652 Popham Assocs., LLC*, No. 17-cv-9983, 2019 U.S. Dist. LEXIS 19375, at *3 (S.D.N.Y. Feb. 6, 2019) (internal quotations omitted) (noting that court oversaw extended settlement negotiations); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including two mediation sessions before a Court-approved neutral third-party and extended settlement discussions that took place over the course of nearly twelve (12) months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff, including disputed merits issues and Defendants' potential inability to pay a larger judgment. Due to disputed issues of fact, the parties would likely need to engage in formal written discovery and depositions, as well as motion practice including collective and class certification and summary judgment, which would consume a tremendous amount of time and resources. Rather than move forward

with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*     *     *     *     *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

By: */s Brent E. Pelton*  
Brent E. Pelton, Esq.  
Taylor B. Graham, Esq.  
**Pelton Graham LLC**  
111 Broadway, Suite 1503  
New York, New York 10006  

*Attorneys for Plaintiff*

By: */s A. Jonathan Trafimow*  
A. Jonathan Trafimow, Esq.  
Jennifer Calamia, Esq.  
**Moritt Hock & Hamroff LLP**  
400 Garden City Plaza  
Garden City, New York 11530  

*Attorneys for Defendants*